William **HAGERTY**, Plaintiff-Appellant,

v.

**L & L MARINE SERVICES, INC., and Union Carbide Corp., Defendants-Appellees.**

No. 85–3147.

United States Court of Appeals, Fifth Circuit.

April 30, 1986.

---

Jack C. Benjamin, New Orleans, La., for plaintiff-appellant.

Timothy F. Burr, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, La., for L & L Marine & Globe Barge, Inc.

Robert M. Contois, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Jeanmarie Lococo, New Orleans, La., for Union Carbide.

Before BROWN, REAVLEY and HILL, Circuit Judges.

REAVLEY, Circuit Judge:

William L. Hagerty was accidently soaked with toxic chemicals while doing duty as a Jones Act seaman. He sues for his damages which include pain and suffering, mental anguish due to the fear of developing cancer, and the medical expense of regular checkups to monitor against that disease. The district court granted summary judgment for the defendants on the ground that no cause of action had accrued. We reverse and remand.

The traditional tort rules may be restated. A tortious cause of action accrues when the victim suffers harm caused by the defendant's wrong. The injury or harm may occur simultaneously with the tortious conduct in the case of a traumatic event or the injury may be latent and not manifested and discovered until some later date. When the fact of the injury does occur, if discovered by the victim, the cause of action accrues. The victim is then entitled to sue for his damages, past and present, as well as his probable future damages, and limitation also begins to run on the time within which suit may be instituted. The victim is entitled to only one cause of action and, if his injuries subsequently worsen, he has no further opportunity for recompense.

The present appeal raises, primarily, the question of whether a cause of action has accrued. We hold that Hagerty suffered physical injuries and was entitled to pursue this action. The element of fear of cancer

and attendant medical costs will be urged upon remand, and we therefore address that issue. Finally, we volunteer our dissatisfaction with the single cause of action rule in face of the recurring problem of injured people facing the possibility of cancer. Those victims should be entitled to recover for present injuries and, also, for the cancer when and if it later develops; they should neither be entitled nor compelled to recover for cancer damages until those damages can be realistically assessed.

## 1. ACCRUAL OF CAUSE OF ACTION

Hagerty was employed by L & L Marine Service, Inc. and/or Globe Barge, Inc. in April 1982, when he served as a tankerman on a barge being loaded with chemicals at the Union Carbide plant in Guyanilla, Puerto Rico. Because of an alleged defect in the barge and/or equipment being used to load the chemicals, Hagerty was completely drenched with dripolene, a chemical containing benzene, toluene and xyolene. He doused his clothes and shoes with water immediately and then removed the clothes and took a shower several hours later. Hagerty was sprayed again with the chemical in a subsequent mishap at the same location, but he was not drenched to the same extent as in the first event. Aside from his ruined shoes, he suffered a brief period of dizziness, followed by leg cramps until he obtained his shower. The following day he felt a stinging in his extremities. Because of these symptoms, the extent of his emersion in the chemical, and his understanding of the carcinogenic effect of that chemical, he is now fearful that he will in time contract the disease. Clearly, he does not have the disease at the present time and has suffered no manifestations of any symptoms or ailments attributed to cancer. He has consulted with several doctors and, at the suggestion of his physician, he continues to undergo regular periodic medical examinations and laboratory tests.

The cause of action has accrued if Hagerty's injury was discernible on the occasion when he was drenched with the toxic chemical. *Albertson v. T.J. Stevenson & Co., Inc.,* 749 F.2d 223 (5th Cir.1984). Dizziness, leg cramps, and a persistent stinging sensation in feet and fingers suggest some harm or injury. The prospects of cancer are of some significance only because that affected Hagerty's appraisal of the significance of what had occurred. Whether a person has suffered harm and whether it is nominal or significant may depend upon that person's own feelings and response. One person might ignore headaches and temporary lassitude, while another—possibly because of a lower pain threshold or because of a greater awareness of the potential consequences—might be so disturbed as to suffer injury and be charged by law with the accrual of a cause of action. In *Albertson* we held that limitations barred the Jones Act and general maritime law claims because the plaintiff's headaches and nausea and a subsequent loss of consciousness gave the plaintiff knowledge of the critical facts that he had suffered more than a minor injury. While the early effects of Hagerty's exposure may not have been as severe as those of Albertson, we hold that they suffice to present an issue of physical injury and to render summary judgment improper.

## 2. THE ELEMENTS OF DAMAGES

Upon trial the plaintiff is entitled to recover damages for all of his past, present and probable future harm attributable to the defendant's tortious conduct. Those damages include pain and suffering and mental anguish. The present fear or anxiety due to the possibility of contracting cancer constitutes a present fact of mental anguish and may be included in recoverable damages. The increase in the risk of his contracting cancer may not be included, however.

### a. *Cancerphobia*

Defendants contend that a plaintiff's cancerphobia should not be considered a present injury unless accompanied by "physical manifestations." Only a physical injury requirement, they argue, will ensure

against the proliferation of "unworthy claims." It would also deny worthy claims, perhaps that of Hagerty. We believe the courts have better devices with which to choose between the worthy and the unworthy.

Cancerphobia is merely a specific type of mental anguish or emotional distress. *See, e.g.,* Gale & Goyer, *Recovery for Cancerphobia and Increased Risk of Cancer,* 15 Cum.L.Rev. 723, 725 (1985). Courts have long allowed plaintiffs to recover for psychic and emotional harm in Federal Employers' Liability Act or Jones Act/maritime cases. *See, e.g., Erie R. Co. v. Collins,* 253 U.S. 77, 85, 40 S.Ct. 450, 453, 64 L.Ed. 790, 794 (1920) ("shame and humiliation"); *Wood v. Diamond M Drilling Co.,* 691 F.2d 1165, 1167 n. 3, 1169 (5th Cir. 1982), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1523, 75 L.Ed.2d 947 (1983) (pain, suffering, mental anguish and loss of life's enjoyment); *Bullard v. Central Vermont Railway, Inc.,* 565 F.2d 193, 197 (1st Cir.1977) (fright or mental suffering resulting from injury); *see also Tampa Ship Repair & Dry Dock Co., Inc. v. Director,* 535 F.2d 936 (5th Cir.1976) (upholding finding of permanent disability, under Longshoremen's and Harbor Workers' Compensation Act, for psychological condition). Indeed, these statutes are intended to provide broad coverage for all work-related "injuries," whether characterized as mental or physical. *See Buell v. Atchison, Topeka & Santa Fe Railway Co.,* 771 F.2d 1320, 1324 (9th Cir.1985) (recognizing claim for purely emotional injury resulting from employer's negligent and intentional harassment, threats, and intimidation). Furthermore, while neither the parties' nor our own research has uncovered any claims for cancerphobia under the Jones Act or FELA, courts have often recognized such claims in other contexts. *E.g., Jackson v. Johns-Manville Sales Corp.,* 781 F.2d 394, 413–15 (5th Cir.1986) (en banc); *Dartez v. Fibreboard Corp.,* 765 F.2d 456, 467–68 (5th Cir.1985); *Gideon v. Johns-Manville Sales Corp.,* 761 F.2d 1129, 1138 (5th Cir.1985);

*Clark v. Taylor,* 710 F.2d 4, 14 (1st Cir. 1983); *Wetherill v. University of Chicago,* 565 F.Supp. 1553, 1559–61 (N.D.Ill.1983); *Arnett v. Dow Chemical Co.,* SF Master File No. 729586, slip op. at 68–77 (Cal.Super.Ct. [S.F.Cty.] March 21, 1983); *Anderson v. Welding Testing Laboratory, Inc.,* 304 So.2d 351, 353 (La.1974) (Tate, J.); *Lorenc v. Chemirad Corp.,* 37 N.J. 56, 179 A.2d 401 (1962); *Ferrara v. Galluchio,* 5 N.Y.2d 16, 152 N.E.2d 249, 176 N.Y.S.2d 996 (1958); *cf. Adams v. Johns-Manville Sales Corp.,* 783 F.2d 589 (5th Cir.1986) (exclusion of cancerphobia evidence harmless error when plaintiff failed to make offer of proof); *Plummer v. Abbott Laboratories,* 568 F.Supp. 920 (D.R.I.1983) (DES mothers barred from claiming fear of future cancer in daughters); *see also* Galante, *When the Mind is Hurt,* Nat'l L.J., May 28, 1984, at 1, col. 1 (discussing trend towards courts recognizing merit of mental distress claims).

■ The physical injury requirement, like its counterpart, the physical impact requirement,[1] was developed to provide courts with an objective means of ensuring that the alleged mental injury is not feigned. W. Prosser, *The Law of Torts* § 54, at 330–33 (4th ed.1971). We believe that notion to be unrealistic. It is doubtful that the trier of fact is any less able to decide the fact or extent of mental suffering in the event of physical injury or impact. With or without physical injury or impact, a plaintiff is entitled to recover damages for serious mental distress arising from fear of developing cancer where his fear is reasonable and causally related to the defendant's negligence. The circumstances surrounding the fear-inducing occurrence may themselves supply sufficient indicia of genuineness. It is for the jury to decide questions such as the existence, severity and reasonableness of the fear.

■ Here, Hagerty has testified that he studied the characteristics of the chemicals he dealt with and thus knew before his

---

**1.** In any event, we note that Hagerty could satisfy either requirement since we have found that

he did suffer a "physical injury" from the drenching, which constitutes an "impact."

exposure that dripolene was a carcinogen. In addition, he felt physical effects after the first dousing; having previously watched benzene absorb into his finger, these effects triggered anxiety because he realized that his entire body had absorbed the chemical. He further testified that he saw a doctor after the exposure and advised his co-worker to do the same. His doctor advised him to undergo periodic medical testing for cancer. In addition to doing so, he subsequently left his job as a tankerman out of concern for future accidents. From this evidence, we conclude that Hagerty has presented sufficient indicia of genuineness so as to make summary judgment of his cancerphobia claim improper.

### b. *Medical Expenses*

■ In addition to any damages for mental distress, Hagerty correctly asserts that he is entitled to recover for the continuing expense of his periodic medical checkups.[2] A plaintiff ordinarily may recover reasonable medical expenses, past and future, which he incurs as a result of a demonstrated injury. C. McCormick, *The Law of Damages* § 90 (1935); *see, e.g., Ross v. United States*, 640 F.2d 511, 521 (5th Cir.1981). Moreover, under the "avoidable consequences rule," he is required to submit to treatment that is medically advisable; failure to do so may bar future recovery for a condition he could thereby have alleviated or avoided. McCormick, *supra*, at § 36, *see also Gideon*, 761 F.2d at 1139. Hagerty testified that he undergoes the checkups at the advice of his physician to ensure early detection and treatment of a possible cancerous condition. We agree that the reasonable cost of those checkups may be included in a damage award to the extent that, in the past, they were medically advisable and, in the future, will probably remain so.

### c. *Increased Risk*

Hagerty also urges that he be allowed to recover damages for his increased risk of contracting cancer in the future. In his brief, he does not specify exactly what he believes that "increased risk" to be; we assume, however, that it is not greater than fifty percent.

■ Recent commentators have argued for recognition of a claim for "increased risk," whether greater or less than fifty percent. *See, e.g.,* Gale & Goyer, *supra,* at 737; Comment, *Increased Risk of Disease from Hazardous Waste: A Proposal for Judicial Relief,* 60 Wash.L.Rev. 635 (1985); Note, *Increased Risk of Cancer as an Actionable Injury,* 18 Ga.L.Rev. 563 (1984). To be consistent with our position in section 3 below and with other courts who have recently addressed this question, *e.g., Dartez,* 765 F.2d at 467; *Gideon,* 761 F.2d at 1137–38; *Laswell v. Brown,* 683 F.2d 261, 269 (8th Cir.1982), *cert. denied,* 459 U.S. 1210, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983); *Ayers v. Township of Jackson,* 189 N.J.Super. 561, 461 A.2d 184 (1983); *Mink v. University of Chicago,* 460 F.Supp. 713, 719 (N.D.Ill.1978); *cf. DePass v. United States,* 721 F.2d 203, 205–06 (7th Cir.1983) (heart disease from amputation), we conclude that a plaintiff can recover only where he can show that the toxic exposure more probably than not *will* lead to cancer. *But see Martin v. City of New Orleans,* 678 F.2d 1321 (5th Cir.1982), *cert. denied,* 459 U.S. 1203, 103 S.Ct. 1189, 75 L.Ed.2d 435 (1983) (without objection, jury allowed to include in damage award the small risk that bullet lodged in plaintiff's neck might someday sever spinal cord); *DePass,* 721 F.2d at 206–10 (Posner, J., dissenting) (injured plaintiff should be allowed to recover for possible decreased life span even if proof did not show probability of early death); *Brafford v. Susquehanna*

---

**2.** Although the question may not arise, considering that the treating physician's prognosis calls for periodic re-examination we would look favorably on applying the ancient generous maritime doctrine of maintenance and cure to hold that maximum recovery has not occurred to allow recovery of these medical and related costs as cure. *See especially* Justice Cardozo's opinion in *Cortes v. Baltimore Insular Line,* 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932); *Calmar Steamship Corp. v. Taylor,* 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938); *Springborn v. American Commercial Barge Lines, Inc.,* 767 F.2d 89 (5th Cir.1985).

*Corp.,* 586 F.Supp. 14, 17–18 (D.Colo.1984) (summary judgment denied as premature on claim for chromosomal damage and increased risk of cancer). Because he does not allege that he has cancer or will probably develop it in the future, Hagerty does not state a claim for this possible effect of his dousing.

### 3. THE SINGLE CAUSE OF ACTION RULE

In *Albertson,* 749 F.2d at 229 n. 3, this court decided that the single cause of action rule barred the plaintiff's suit for complications to his initial injury from trichloroethylene exposure. That result is consistent with the vast majority of latent diseases cases under state tort law, particularly those involving asbestos exposure. *See, e.g., Graffagnino v. Fibreboard Corp.,* 776 F.2d 1307, 1309 (5th Cir.1985); *Gideon,* 761 F.2d 1129; *Carbonaro v. Johns-Manville Corp.,* 526 F.Supp. 260 (E.D.Pa.1981), *aff'd,* 688 F.2d 819 (3d Cir. 1982); *cf. Marathon Oil Co. v. Lunsford,* 733 F.2d 1139, 1142 (5th Cir.1984) (single accident may cause two back injuries, one immediate and one latent). The victim of exposure to toxic substances which cause present harm and which may at some future time cause cancer or other serious disease is further victimized by the single cause of action rule. If Hagerty, for example, cannot prove a future probability of his contracting cancer when his trial is conducted but thereafter does contract the disease because of the 1982 exposure at Guyanilla, he will have no remedy for his damages suffered from cancer. He could not, however, have postponed this suit to protect himself from the catastrophic damages because, having suffered some injury, he was forced to sue or suffer the same fate as Albertson.

Even when there is evidence that the increased risk of cancer exceeds fifty percent, the rule does not work well. A plaintiff, if suffering any injury, is forced to seek cancer damages although the extent of those damages is yet highly speculative.

They may be nothing at all because what was probable may not occur. The extent of the disease may be limited or the suffering and expenses may be enormous.

The rule has its disadvantages for all parties. Consider the case of *Jackson,* 781 F.2d 394. The prognosis of Jackson's future cancer was not predicated on the detection of any personal physiology, not from results of a cytogenetic test or a showing of immunodysfunction in Jackson himself. It was based entirely on the experience of all persons who have developed asbestosis from heavy exposure to asbestos dust; over fifty percent of those people have in the past died from bronchogenic carcinoma. *Jackson,* 781 F.2d at 413 n. 24. Should all plaintiffs who make that showing recover for cancer damages, and if they match the experience upon which the testimony is based, over forty percent of them will not contract cancer even though they will have been awarded the damages. The onset of cancer, its extent and the amount of damages are too speculative to be decided in this manner.

█ At least in the toxic chemical or asbestos cases, the disease of cancer should be treated as a separate cause of action for all purposes. There should be no cause of action or beginning of the running of limitations until the diagnosis of the disease. Nor should damages for that disease be recoverable unless and until that time. A prior but distinct disease, though the tortfeasor may have paid reparations, should not affect the cause of action and damages for the subsequent disease.[3]

A few courts have been willing to construe the "single injury" rule so as not to preclude a later suit for latent disease. *E.g., Wilson v. Johns-Manville Sales Corp.,* 684 F.2d 111 (D.C.Cir.1982) (allowing suit for mesothelioma even though deceased had earlier discovered he had asbestosis without bringing suit for that disease); *Goodman v. Mead Johnson & Co.,* 534 F.2d 566 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748

---

**3.** We do not deny the possibility of some preclusion of common issues in the litigation of the

first cause of action.

(1977) (finding suit for cancer not barred by earlier discovery of thrombophlebitis, because taking of same drug could have exposed plaintiff to "separate risks" and could have produced phlebitis and cancer by separate chains of causality). Chief Judge Clark's discussion in the panel opinion in *Jackson* also strongly advocates abandoning the rule in latent injury cases where cancer, though likely to develop in the future, has not developed by the time of trial. *See Jackson v. Johns-Manville Sales Corp.*, 727 F.2d 506, 516–22 (5th Cir. 1984), *on reh'g en banc*, 750 F.2d 1314 (5th Cir.1985), *question certified en banc*, 757 F.2d 614 (5th Cir.1985), *certification declined*, 469 So.2d 99 (Miss.1985), *on reh'g en banc*, 781 F.2d 394 (5th Cir.1986).

When the proper case is presented, this panel hopes that the en banc court will consider this problem, if Congress has not acted upon it by that time.

The district court's judgment is REVERSED and the cause is REMANDED to that court.