Richard I. JOHNSON et ux.

v.

ARMSTRONG CORK COMPANY et al.

Leonard FEITT et ux.

v.

ARMSTRONG WORLD
INDUSTRIES, INC. et al.

Bobby FULGIUM et ux.

v.

ARMSTRONG WORLD
INDUSTRIES, INC. et al.

John Marvin UNDERWOOD

v.

ARMSTRONG WORLD
INDUSTRIES, INC. et al.

Willie THOMAS et ux.

v.

UNION CARBIDE
CORPORATION et al.

Civ. A. Nos. 82–2605, 85–0050, 85–1192,
85–2756 and 85–3544.

United States District Court,
W.D. Louisiana,
Shreveport Division.

Oct. 10, 1986.

Fred Baron, Janice E. Robinson, Baron & Bud, Dallas, Tex., for all plaintiffs.

Thomas Bergstedt and Richard Perles, Scofield, Bergstedt, Gerard, Mount & Veron, Lake Charles, La., for Fibreboard Corp., The Celotex Corp., Eagle-Picher Industries, Inc., Keene Corp., Pittsburg-Corning, Owens-Illinois, Inc., Armstrong World Industries, Inc., Owens-Corning Fiberglas Corp., H.K. Porter Co., Inc., Union Carbide Corp., Carey Candian Mines, Ltd.

Maury Hicks, Hicks & Bookter, Shreveport, La., and Mary H. Thompson, Baton Rouge, La., for Nicolet, Inc. (successor to Keasbey-Mattison Corp.):

Linda S. Harang, J. Michael Johnson, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, La., for Crown Cork

and Seal Co., Inc. (successor to Mundet Cork Co.)

## MEMORANDUM RULING

STAGG, Chief Judge.

At the pretrial conference held in these asbestos cases which are consolidated for trial, the court announced its intended rulings on two issues: the admissibility of state-of-the-art evidence and the admissibility of cancer evidence. This memorandum is issued to serve as guidance for future asbestos litigants in this court.

## I STATE–OF–THE–ART

In *Halphen v. Johns-Manville Sales Corp.*, 484 So.2d 110 (La.1986), the Louisiana Supreme Court held that evidence which establishes that the defendant manufacturer did not know and reasonably could not know of the inherent danger posed by its products (state-of-the-art) was irrelevant and inadmissible in an asbestos suit. The issue now before this court is the converse of the situation presented in *Halphen* and the question posed is whether *plaintiffs* may introduce state-of-the-art evidence in an asbestos case.

For the reasons discussed below, all state-of-the-art evidence, whether plaintiffs *or* defendants seek its introduction, shall be excluded from trial.

In *Halphen*, the Louisiana Supreme Court identified two general categories of products liability claims: (1) *unreasonably dangerous products*—whether by unreasonably dangerous design per se, design flaw, construction flaw, failure to warn, or failure to use alternative designs which pose less risk of harm; and (2) *unreasonably dangerous per se.*[1]

The *Halphen* court made it explicitly clear that "whether the knowledge of the danger in a product is material, relevant, or admissible depends on the particular theory of recovery under which the plaintiff tries his case." *Id.* at 113. In strict products liability cases, proof that the product was unreasonably dangerous in normal use is an essential element of the plaintiff's case. However, the "method of proof of this element varies under each theory ... and this is why the knowledge available to the manufacturer is material only with regard to certain theories." *Id.*

The *Halphen* court ruled on the admissibility of state-of-the-art evidence in each of the categories outlined below:

1. *"unreasonably dangerous per se"*— state-of-the-art (knowledge) irrelevant and inadmissible. "This theory considers the product's danger-in-fact, not whether the manufacturer perceived or could have perceived the danger, because the theory's purpose is to evaluate the product itself, not the manufac-

1. The *Halphen* court provides the following definitions: (1) *"Unreasonably dangerous per se"*— "A product is unreasonably dangerous per se if a reasonable person would conclude that the danger-in-fact of the product, whether foreseeable or not, outweighed the utility of the product." 484 So.2d at 114. (2) *"Unreasonably dangerous in design per se"*—"A product may be unreasonably dangerous because of its design [because] ... [a] reasonable person would conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product. This is the same danger-utility test applied in determining whether a product is unreasonably dangerous per se." *Id.* at 115. (3) *"Design/composition defect"*—"A product is unreasonably dangerous in construction or composition if at the time it leaves the control of its manufacturer it contains an unintended abnormality or condition which makes the product more dangerous than it was designed to be." *Id.* at 114.

(4) *"Failure to warn"*—"Although a product is not unreasonably dangerous per se or flawed by a construction defect, it may still be an unreasonably dangerous product if the manufacturer fails to adequately warn about a danger related to the way the product is designed. A manufacturer is required to provide an adequate warning of any danger inherent in the normal use of its product which is not within the knowledge of or obvious to the ordinary user." *Id.* at 114–15. (5) *"Failure to use alternative products/design"*—"a product may be unreasonably dangerous because "[a]lthough balancing under the risk utility test leads to the conclusion that the product is not unreasonably dangerous per se, alternative products were available to serve the same needs or desires with less risk of harm; or, ... [a]lthough the utility of the product outweighs its danger-in-fact, there was a feasible way to design the product with less harmful consequences." *Id.* at 115.

turer's conduct. Likewise, the benefits are those actually found to flow from the use of the product, rather than as perceived at the time the product was designed and marketed. The fact that a risk or hazard related to the use of a product was not discoverable under existing technology or that the benefits appeared greater than they actually were are both irrelevant.... Under this theory, the plaintiff is not entitled to impugn the conduct of the manufacturer for its failure to adopt an alternative design or affix a warning or instruction to the product.... If a plaintiff proves that the product is unreasonably dangerous per se, it is not material that the case could have been tried as a design defect cases or other type defect case." *Id.* at 114.

2. *"Unreasonably dangerous design per se"*—state-of-the-art irrelevant and inadmissible. "The first reason for concluding that a design is defective is governed by the same criteria for deciding whether a product is unreasonably dangerous per se. The overlap in categories makes it unnecessary to decide whether a product's defect is one of design or of another kind if the product is proven to be unreasonably dangerous per se." *Id.* at 115.

3. *"Design/composition defect"*—state-of-the-art irrelevant and inadmissible. "A manufacturer or supplier who sells a product with a construction or composition flaw is subject to liability without proof that there was any negligence on its part in creating or failing to discover the flaw. Evidence of what knowledge was available to the manufacturer has no relevance in such cases because the products, by definition, fail to conform to the manufacturer's own standards." *Id.* at 114.

4. *"Failure to warn"*—state-of-the-art is relevant. A manufacturer "must keep abreast of scientific knowledge, discoveries, and advances and is presumed to know what is imparted thereby.... A manufacturer also has a duty to test and inspect its product, and the extent of research and experiment must be commensurate with the dangers involved.... Under the failure to warn theory evidence as to the knowledge and skill of an expert may be admissible in determining whether the manufacturer breached its duty." *Id.* at 115.

5. *"Failure to use alternative products/designs"*—state-of-the-art is relevant. "In regard to the failure to use alternative products or designs, as in the duty to warn, the standard of knowledge, skill and care is that of an expert, including the duty to test, inspect, research and experiment commensurate with the danger.... Accordingly, evidence as to whether the manufacturer, held to the standard and skill of an expert, could know of and forseeably avoid the danger is admissible under a theory of recovery based on alleged alternative designs or alternative products." *Id.*

From the pleadings filed in these cases, it is clear that asbestos cases may be tried on many theories: unreasonably dangerous per se, unreasonably dangerous design, composition/construction defects, failure to warn, failure to use alternative products or designs, and negligence. Under Louisiana law, some of the theories make introduction of state-of-the-art evidence irrelevant, while under other theories state-of-the-art evidence is an essential element of the claim. It is axiomatic that relevant evidence is admissible. *See* Fed.R.Evid. 402. However, under Fed.R.Evid. 403, such evidence may be excluded:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Rule 403 requires the court to balance the probative value of evidence against any harm likely to result from its admission. A balancing of the factors in these cases, convinces the court that the admission of

state-of-the-art evidence—although of probative value to negligence, failure to warn, and failure to use alternative product/design theories—is outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading of the jury, and by considerations of undue delay, waste of time, and needless presentation of cumulative evidence.

The danger of unfair prejudice is readily apparent. The state-of-the-art evidence which plaintiffs seek to introduce dates back to the 1930s and 40s. This evidence is highly suggestive of the fact that manufacturers knew, or should have known, that friable asbestos products were likely to cause substantial lung injury to those who came in contact with the product. For historical accuracy, the plaintiffs might as well go all the way back to ancient civilization. "The adverse biological effects of asbestos (the word comes from a Greek adjective meaning "inextinguishable") were observed as early as the First Century by the Greek geographer Strabo and by the Roman naturalist Pliny the Elder, both of whom mentioned in passing a sickness of the lungs in slaves whose task was to weave asbestos into cloth." T. Brodeur, Annals of Law, "The Asbestos Industry on Trial," *The New Yorker*, at 57 (June 10, 1985).

Thus, for a long period of time (one might even say "forever," if Strabo and Pliny are to be believed), manufacturers of asbestos knew of the danger to which plaintiffs were exposed. Viewed in this light, plaintiff's exposure to the dangers of asbestos appear needless and senseless; the manufacturer's failure to take steps to minimize these dangers appears callous. Juries in other jurisdictions which award punitive damages have frequently assessed substantial punitive awards against asbestos manufacturers. Louisiana is not a jurisdiction which provides for punitive damages. The admissibility of this state-of-the-art evidence appears, in the words of the advisory committee, to have "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." In light of the avail-

ability of modern evidence of the dangers of asbestos, and the fact that Louisiana is not a punitive damages jurisdiction, the unfair prejudice of plaintiffs' proposed state-of-the-art evidence appears substantial.

The danger of confusion of the issues also appears substantial to this court. State-of-the-art evidence applies to some of its theories under which plaintiff seeks recovery, but not to others. The purpose of the products liability category of unreasonably dangerous per se, unreasonably dangerous per se design, and construction/composition defect, is to put the *product* on trial. As discussed above, state-of-the-art evidence has a substantial tendency to place the *manufacturers* on trial. This court is not convinced that the jurors will be able to separate the trial of the manufacturers from the trial of the products. The advisory committee's notes indicate that the lack of effectiveness of a limiting instruction is a factor to be considered in deciding whether to exclude evidence under Fed.R.Evid. 403. Further, the state-of-the-art evidence may not be admissible under Fifth Circuit jurisprudence against all defendants. Thus, some of the state-of-the-art evidence will be admissible against one defendant but not others. This further complicates the segregation of evidence which must be performed by the jurors.

This court finds that the danger of misleading the jury with state-of-the-art evidence is substantial. It is feared that the introduction of state-of-the-art evidence will mislead the jury into the perception that asbestos manufacturers should be punished. Whether stated overtly, or simply covertly suggested, the message sent to the jury through the introduction of state-of-the-art evidence is that the jurors should "send a message" to asbestos manufacturers. Louisiana tort law is limited exclusively to a compensatory function. "Sending messages" is not part of our scheme of delictual obligation.

The considerations of undue delay, waste of time, and needless presentation of cumu-

lative evidence all weigh against the admissibility of state-of-the-art evidence. The amount of state-of-the-art evidence which plaintiffs seek to introduce is immense. The production of such evidence would appear to be nothing but a waste of time, in light of the fact that plaintiffs have a strong probability of success on "pure" strict liability theories: unreasonably dangerous per se, unreasonably dangerous design per se, and construction/composition defects. Presentation of state-of-the-art evidence would appear to be needlessly cumulative in light of the objective data concerning the dangers of asbestos, and the Louisiana Supreme Court's ruling in *Halphen* that asbestos is unreasonably dangerous per se.

This is a diversity case and, as such, is governed by Louisiana law under the *Erie* doctrine. In excluding state-of-the-art evidence under Rule 403, this court has taken account of legal precepts discussed by the Louisiana Supreme Court in the *Halphen* case. The *Halphen* court stated:

> Strict products liability evolved from principles of public order, and its contours should be shaped according to the purposes it serves within the framework of our civil code.

*Id.* at 116. The Court also stated:

> [T]his court has viewed strict products liability as an instrument of public order based on both codal principles and empirical considerations, not as a purely judicial creation.

*Id.* at 117. One of the public order precepts behind the exclusion of state of the art evidence is the reduction of costs in trying strict liability cases:

> The costs of administering the unreasonably dangerous per se category of products liability cases will be reduced by eliminating litigation over the date when a product's danger became scientifically knowable. In unreasonably dangerous per se cases, as in construction defect cases now, the parties should not be forced to produce experts in the history of science and technology to *speculate, and possibly confuse jurors,* as to what

knowledge was available and what improvements were feasible in a given year.

*Id.* at 119 (emphasis added).

In light of the above-quoted language from *Halphen,* it is clear that state of the art evidence may be properly excluded under Rule 403. The balancing required of the court under that rule has already been accomplished by the Louisiana Supreme Court and weighs against admission of the evidence on grounds of jury confusion, delay and waste of resources.

This court is fully aware that it is limiting the plaintiffs in their selection of theories on which to proceed. However, the sheer volume, complexity and special burdens upon the judicial system caused by asbestos cases dictates such a course of action under Fed.R.Evid. 403. Fed.R.Civ.P. 1 teaches that all procedures in United States District Court must be conducted in a matter "to secure the just, speedy, and inexpensive determination of every action." Rule 102 of the Federal Rules of Evidence provides that the evidentiary rules "shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." This court, in obedience to the rules of evidence, holds that the truth may be ascertained and a just determination made without the introduction of state-of-the-art evidence. The elimination of state-of-the-art evidence will secure fairness in the administration of the asbestos claims, eliminate unjustifiable expense and delay, and will secure the just, speedy and inexpensive determination of these suits, and similar suits now pending on the docket of this court.

Accordingly, evidence of the knowledge of the danger of asbestos products by asbestos manufacturers (state-of-the-art evidence) is hereby RULED inadmissible.

## II CANCER EVIDENCE

The admissibility of evidence concerning plaintiffs' fears of contracting cancer and

probabilities of contracting cancer in the future are governed by numerous cases. *Adams v. Johns-Manville Sales Corp.*, 783 F.2d 589 (5th Cir.1986) (on petition for rehearing); *Dawsey v. Olin Corp.*, 782 F.2d 1254 (5th Cir.1986); *Hagerty v. L & L Marine Services*, 788 F.2d 315 (5th Cir. 1986), *modified*, 797 F.2d 256 (5th Cir. 1986); *Gideon v. Johns-Manville Sales Corp.*, 761 F.2d 1129 (5th Cir.1985); *Dartez v. Fibreboard Corp.*, 765 F.2d 456 (5th Cir.1985). While these last two cases are governed by Texas law, the principles involved are analogous to those under Louisiana law, and the cases are illustrative of the factual distinctions which recent decisions of Fifth Circuit panels have drawn.

The single cause of action rule bars a plaintiff from filing a second suit to recover for future complications arising out of his initial injury. As noted by the Fifth Circuit, this rule is applied by the vast majority of courts in latent disease cases, particularly those involving asbestos exposure. *Hagerty*, 788 F.2d at 320. The single cause of action rule is inequitable in many instances. If the plaintiff cannot prove a future probability of his contracting cancer when his initial trial is conducted but thereafter does contract the disease, he may have no remedy for his damages suffered from cancer. On the other hand, even when there is evidence that the increased risk of cancer exceeds 50 percent, the rule is still inequitable. These damages are highly speculative. There may be no damages at all because the plaintiff may not in fact contract cancer. *See Id.* Nevertheless, courts have had to develop rules to deal with cancer evidence in latent disease cases involving toxic torts. Until Congress—or the *en banc* court for the United States Court of Appeals for the Fifth Circuit—dictates otherwise, the following rules will be applied.

■ FIRST, evidence of fear of contracting cancer is admissible when there is an actionable injury. In the original panel opinion in *Hagerty*, the court noted: "With or without physical injury or impact, a plaintiff is entitled to recover damages for serious mental distress arising from fear of developing cancer where his fear is reasonable and causally related to the defendant's negligence. The circumstances surrounding the fear-inducing occurrence may themselves supply sufficient *indicia* of genuineness. It is for the jury to decide questions such as the existence, severity and reasonableness of the fear." 788 F.2d at 318. This was later modified to clarify that there must be actionable injury before recovery for "cancerphobia" is permissible. 797 F.2d 256 (5th Cir.1986) (on reconsideration).

■ SECOND, medical expenses, past and future, which plaintiffs incur to monitor the development of a possible cancerous condition is a recoverable element of damages. In *Hagerty*, the court noted that plaintiff "testified that he undergoes the checkups at the advice of his physician to ensure early detection and treatment of a possible cancerous condition. We agree that the reasonable cost of those checkups may be included in a damage award to the extent that, in the past, they were medically advisable and, in the future, will probably remain so." 788 F.2d at 319.

■ THIRD, evidence concerning the increased risk of contracting cancer in the future will be admissible where the plaintiff "can show that the toxic exposure more probably than not *will* lead to cancer." *Id.* at 319. *See also Adams*, 783 F.2d at 592; *compare Gideon*, 761 F.2d 1129 (cancer evidence admissible) *with Dartez*, 765 F.2d 456 (cancer evidence inadmissible). Where there is no evidence that the increased risk of cancer exceeds 50 percent, there may be no recovery for the increased risk of cancer. "Evidence that one condition might lead to another condition does not allow a plaintiff to recover for the second condition...." *Dawsey*, 782 F.2d at 1263.

■ FOURTH, evidence of the carcinogenic properties of asbestos is admissible and relevant to the issue of liability. *See Dartez*, 765 F.2d at 468.

Accordingly, it is ORDERED that cancer evidence to be used in these asbestos trials

shall comport with the rules established in this memorandum ruling.

An order consistent with the terms of this memorandum ruling shall issue herewith.

### ORDER

For the reasons enumerated in the foregoing Memorandum Ruling,

IT IS ORDERED that state-of-the-art evidence is hereby ruled inadmissible and shall be EXCLUDED from trial in these matters.

IT IS FURTHER ORDERED that all cancer evidence in these trials comport with the rules established in the memorandum ruling issued herewith.