[No. A087349. First Dist., Div. Two. Oct. 4, 2000.]

ROBERT WAGNER, Plaintiff and Appellant, v.
APEX MARINE SHIP MANAGEMENT CORPORATION et al.,
Defendants and Respondents.

**COUNSEL**

Brayton, Purcell, Curtis & Geagan, Alan R. Brayton, Gilbert L. Purcell, James Geagan, Claudia J. Martin and Joanne E.K. Larson for Plaintiff and Appellant.

Kaye, Rose & Partners, Andrew I. Port and Cheryl A. Morris for Defendants and Respondents.

**OPINION**

**KLINE, P. J.**—Robert Wagner appeals after the trial court sustained, without leave to amend, the demurrer of respondents Apex Marine Ship Management Corporation; Keystone Shipping Company; Valdez Tankships Corporation; Central Gulf Lines, Inc.; and OMI Corporation in this asbestos action, brought, as to these respondents, pursuant to the Jones Act (46 U.S.C. Appen. § 688). The sole issue on appeal is whether a plaintiff's discovery of one asbestos-related disease triggers the running of the statute of limitations on all separate and distinct asbestos-related diseases caused by the same exposure to asbestos. We conclude that it does not and, therefore, shall reverse the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On April 20, 1998, appellant filed a complaint for personal injuries against numerous defendants, seeking damages for asbestos-related injuries. The

claims against respondents included causes of action for unseaworthiness, negligence under the Jones Act, and maintenance and cure (maritime causes of action). In the complaint, appellant alleged that he had worked as a merchant seaman for over 40 years and was exposed to asbestos dust during most of that time. He also alleged that, after he retired, he "was diagnosed with asbestosis on January 27, 1998, and previously diagnosed with asbestos-related pleural disease on or about July 1993."

After the trial court sustained another maritime defendant's demurrer to the maritime causes of action with leave to amend on statute of limitations grounds, appellant filed a second complaint entitled "First Amendment to Complaint" on July 16, 1998, alleging, inter alia: "Plaintiff was diagnosed with asbestos-related pleural disease on or about July 1993, from which he suffered no symptoms or disability. On January 27, 1998, plaintiff was diagnosed with asbestosis, as a result of which disease he suffers from shortness of breath, fatigue and partial disability." The trial court sustained respondents' demurrer to the maritime causes of action, with leave to amend "to allege a second unrelated injury."[1]

On December 9, 1998, appellant filed a third complaint entitled "First Amended Complaint," in which he alleged, inter alia: "On or about July 21, 1993, plaintiff was diagnosed with asbestos-related pleural plaques, from which he suffered no disability . . . . On January 27, 1997, plaintiff was diagnosed with asbestosis, from which he suffers shortness of breath, fatigue, and partial disability. [¶] Plaintiff alleges that these two asbestos-related diseases are separate and distinct. Plaintiff's pleural disease is characterized by calcified pleural plaques that occur in the lining of the lung and that appeared on his July 21, 1993 chest x-ray. Plaintiff's asbestosis is characterized by lung fibrosis, or scarring in the lung itself, which was first observed through review of plaintiff's chest CT scans in January 1997. Plaintiff alleges that his asbestosis is in no way a progression of his pleural disease because the two diseases originate and progress independently and are separate and distinct in the areas of the body in which they arise and progress or the areas of the body they affect."[2]

The trial court sustained respondents' demurrer to the first amended (or third) complaint without leave to amend on April 6, 1999, finding that the maritime causes of action were barred by the applicable three-year statute of limitations. Appellant filed a notice of appeal on June 4, 1999.

---

[1]Respondents note that Central Gulf Lines, Inc., was not served until December 1998, and so did not join in this demurrer.

[2]According to appellant, the first amended complaint incorrectly states that he was diagnosed with asbestosis in 1997, when it was actually diagnosed in 1998, as alleged in the earlier complaints. This discrepancy makes no legal difference in the resolution of the question before us.

DISCUSSION

█ Appellant contends the trial court erred in finding that his three Jones Act claims are barred by the applicable statute of limitations. According to appellant, because he has alleged that he suffers from two distinct asbestos-related diseases, with the later-discovered illness (asbestosis) forming the basis of his claim against respondents,[3] the trial court should have found his claim timely under the Jones Act.[4]

█ On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo. (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501 [82 Cal.Rptr.2d 368].) We "must accept as true not only those facts alleged in the complaint but also facts that may be implied or inferred from those expressly alleged. [Citation.] A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar of the statute of limitations to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred. [Citation.]" (*Marshall v. Gibson, Dunn & Crutcher, supra,* 37 Cal.App.4th 1397, 1403.)

█ Federal maritime law governs our review of this case. (See 46 U.S.C. Appen. § 688; see also *Albertson v. T.J. Stevenson & Co., Inc.* (5th Cir. 1984) 749 F.2d 223, 228.) The applicable statute of limitations provides: "Unless otherwise specified by law, a suit for recovery of damages for personal injury or death, or both, arising out of a maritime tort, shall not be maintained unless commenced within three years from the date the cause of action accrued." (46 U.S.C. Appen. § 763a.)

The "discovery rule" for determining when a cause of action accrues in latent disease cases has been applied in Jones Act cases. (See, e.g., *Albertson v. T.J. Stevenson & Co., Inc., supra,* 749 F.2d at p. 229; *Hicks v. Hines Inc.* (6th Cir. 1987) 826 F.2d 1543, 1544-1545.) █ A cause of action for a tort accrues when there has been an invasion of a plaintiff's legally protected interest, which in most cases occurs at the time that the tortious act is committed. (*Albertson v. T.J. Stevenson & Co., Inc., supra,* 749 F.2d at p. 228.) "In some cases, however, the injured person may not realize that a tort

---

[3]Appellant "concedes that any damage claims arising from his asbestos-related pleural disease are time barred as to respondents . . . ."

[4]Appellant asks that we take judicial notice of excerpts from three medical texts, pursuant to Evidence Code sections 452 and 459. Since we must accept as true the factual allegations in appellant's complaint that pleural disease and asbestosis are separate and distinct diseases (see *Marshall v. Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397,1403 [44 Cal.Rptr.2d 339]), we deny this request for judicial notice as unnecessary.

has been committed upon his person, since he may sustain a latent injury which either is not or cannot be discovered until long after the tortious act that caused the injury has occurred and after the applicable statute of limitations otherwise would have run. In such a case, courts have routinely applied the so-called discovery rule to toll the running of the statute of limitations. When the discovery rule applies, the plaintiff's cause of action does not accrue on the date the tortious act occurred, but on the date the plaintiff discovers, or reasonably should have discovered, both the injury and its cause." (*Id.* at p. 229, citing *United States v. Kubrick* (1979) 444 U.S. 111, 122 [100 S.Ct. 352, 359, 62 L.Ed.2d 259] and *Urie v. Thompson* (1949) 337 U.S. 163, 170 [69 S.Ct. 1018, 1024-1025, 93 L.Ed. 1282, 11 A.L.R.2d 252].)

However, few Jones Act cases have addressed a question even somewhat similar to the one before us: whether the first sign of an asbestos-related disease triggers the running of the statute of limitations on all separate and distinct asbestos-related diseases caused by the same asbestos exposure. In *Hagerty v. L & L Marine Services, Inc.* (5th Cir. 1986) 788 F.2d 315, the Fifth Circuit Court of Appeals reversed the district court's grant of summary judgment against a Jones Act plaintiff who had brought suit against his employer for damages incurred when he was soaked with toxic chemicals. The appellate court held that a cause of action had accrued even though the plaintiff had suffered only minimal physical injuries at the time of exposure. (*Id.* at pp. 316-317.) The court also found that the plaintiff was entitled to recover damages for his genuine fear of cancer and attendant medical costs. (*Id.* at pp. 317-318.)

In dicta, the court "volunteer[ed its] dissatisfaction with the single cause of action rule in face of the recurring problem of injured people facing the possibility of cancer. Those victims should be entitled to recover for present injuries and, also, for the cancer when and if it later develops; they should neither be entitled nor compelled to recover for cancer damages until those damages can be realistically assessed." (*Hagerty v. L & L Marine Services, Inc., supra*, 788 F.2d at p. 317.) The *Hagerty* court further opined that "[t]he victim of exposure to toxic substances which cause present harm and which may at some future time cause cancer or other serious disease is . . . victimized by the single cause of action rule" and that, at least in toxic chemical or asbestos cases, the disease of cancer should be treated as a separate cause of action for all purposes. (*Id.* at p. 320.) "There should be no cause of action or beginning of the running of limitations until the diagnosis of the disease. Nor should damages for that disease be recoverable unless and until that time. A prior but distinct disease, though the tortfeasor may have paid reparations, should not affect the cause of action and damages for the subsequent disease." (*Ibid.*)

In *Hicks v. Hines Inc.*, *supra*, 826 F.2d 1543, the Jones Act plaintiff had sued his employer for exposure to chemicals and subsequent bladder cancer. The Sixth Circuit Court of Appeals agreed with the district court's finding that the action was barred by the statute of limitations and affirmed its grant of summary judgment. (*Id.* at pp. 1543-1544.) The court concluded that the plaintiff's previous blindness, also a result of the toxic chemical exposure, had commenced the running of the statute of limitations because his blindness should reasonably have put him on notice that he had been harmed by the exposure. (*Id.* at pp. 1546-1547.)

In reaching this conclusion, the *Hicks* court acknowledged "the difficulty which arises when a plaintiff who has suffered a legally cognizable but relatively small injury is required to sue for both existing and potential damages. This difficulty may be particularly formidable when there is only a possibility of any particular future illness, as can often occur when the potential illness is cancer. [Citation.] A plaintiff's interest in filing his suit within the relevant statute of limitations conflicts with his inability to display symptoms of a particular future illness. The defendant's interest in repose also conflicts with his exposure to claims for potential damages which may never come to pass." (*Hicks v. Hines Inc.*, *supra*, 826 F.2d at p. 1545.)

The *Hicks* court observed that "[d]ifferent courts have reached different conclusions about appropriate mechanisms for dealing with this dilemma." After quoting the Fifth Circuit's suggestion in *Hagerty* regarding treating cancer as a separate cause of action in toxic chemical and asbestos cases, the court stated: "On the other hand, there are other means of addressing this issue which seem at least as efficacious, while still preserving the policy of repose advanced by the statute of limitations. One possibility would be to award an insurance policy covering the risk of developing cancer as part or all of the compensation for unmanifested injuries stemming from an exposure to carcinogenic materials. The risk prediction and distribution involved in such an award is a function for which insurance companies and policies are exactly fitted." (*Hicks v. Hines Inc.*, *supra*, 826 F.2d at pp. 1545-1546.)

Finally, in *Souders v. Atlantic Richfield Co.* (E.D.Pa. 1990) 746 F.Supp. 570, 573-574, the district court held that the plaintiff's Jones Act action for asbestos-related injuries was time-barred. The court explained that the statute of limitations applicable to the plaintiff's claim began to run in 1981 when (1) the plaintiff's doctor told him he had interstitial fibrosis and in all likelihood asbestosis and (2) the plaintiff knew that exposure to asbestos on his former employer's ship had caused his disease. The court rejected the plaintiff's argument that only a final and definitive diagnosis of asbestosis

will trigger the running of the statute of limitations, stating that the plaintiff should have known in 1981 that he was injured because of his exposure to asbestos and should have begun making arrangements to commence litigation within the limitations period. Instead, the plaintiff chose to do nothing except to wait until the condition got worse. (*Id.* at p. 575; accord, *Mounts v. Grand Trunk Western R.R.* (6th Cir. 2000) 198 F.3d 578, 581-582 [discovery rule bars Federal Employers' Liability Act (FELA) claim brought more than three years after initial injury and its cause were discovered, even if injury "was later worsened" by same employer]; *Fries v. Chicago & Northwestern Transp. Co.* (7th Cir. 1990) 909 F.2d 1092 [same].)

Respondents argue that we are required to follow *Hicks* and *Souders* because they are the only Jones Act decisions that are directly on point. They also vigorously assert that *Hagerty* is irrelevant because the court's critique of the single action rule is mere dicta, and "has no precedential weight." We disagree with both of respondents' assertions.

■ While decisions of the United States Supreme Court are binding on state courts on federal questions, " 'the decisions of the lower federal courts, while persuasive, are not binding on us. [Citation.] Thus, in the absence of a controlling United States Supreme Court opinion, we make an independent determination of federal law.' " (*Forsyth v. Jones* (1997) 57 Cal.App.4th 776, 782-783 [67 Cal.Rptr.2d 357], citing *People v. Bradley* (1969) 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129].)[5] *Hicks* is not an asbestos case, but it does address the situation that arises when a single injury gives rise, over time, to more than one disease; *Hicks* therefore has relevance to the issues we face in this case. However, we do not agree with its result. Although the Sixth Circuit acknowledged the difficulties inherent in this type of case, we find its suggested solution—awarding insurance policies in latent disease cases—simply inexplicable. (See *Hicks v. Hines Inc., supra,* 826 F.2d at pp. 1545-1546.)

■ Nor is *Souders*, a district court case from the Eastern District of Pennsylvania, persuasive. *Souders* involved a plaintiff who waited more than three years after he should have been aware that he had an asbestos-related disease to file suit. (*Souders v. Atlantic Richfield Co., supra,* 746 F.Supp. at pp. 573-575.) Because *Souders* addressed the distinct question of when the

---

[5]In a petition for rehearing, which we denied, respondent maintained that the rule set forth in *Forsyth v. Jones, supra,* 57 Cal.App.4th at pages 782-783, is inapplicable to this proceeding because it is a federal maritime case and we are required to follow any lower federal court decision interpreting federal maritime law. We reject this illogical proposition. To interpret the settled rule articulated in *Forsyth* to mean, "the decisions of the lower federal courts, while persuasive, are not binding on [state courts on federal questions]" except where federal *maritime* questions are concerned, would be absurd. (See *ibid.*)

statute of limitations began to run with respect to the onset of a single disease, rather than the question raised here regarding two separate disease processes, it is not helpful to our analysis.

Instead, we find the reasoning of several non-Jones Act cases, as well as the dicta in *Hagerty*, far more useful than *Hicks* or *Souders* in attempting to solve the dilemma plaintiffs face in latent disease cases of this sort. We find particularly persuasive the thoughtful reasoning of the District of Columbia Circuit Court of Appeals in *Wilson v. Johns-Manville Sales Corp.* (D.C. Cir. 1982) 684 F.2d 111, 112 [221 App.D.C. 337] (*Wilson*), in which the court addressed the nearly identical issue presented in this case, and held "that time to commence litigation does not begin to run on a separate and distinct disease until that disease becomes manifest." (*Ibid.*)

In *Wilson*, the plaintiff, a former insulation worker, was diagnosed with mild asbestosis in 1973 and with mesothelioma in 1978, shortly before his death. (*Wilson, supra*, 684 F.2d at p. 113.) His widow filed suit in 1979, within the applicable three-year District of Columbia statute of limitations as to the mesothelioma diagnosis, but more than three years after the initial asbestosis diagnosis. (*Id.* at pp. 113, 115.) In the process of determining whether the claim was timely, the appellate court examined the two primary policies served by a statute of limitations: evidentiary considerations and repose. (*Id.* at pp. 118-119.) While acknowledging that a defendant's interest in repose is best served by a single limitations period, the court observed that "in situations involving the risk of manifestation of a latent disease, unlike the mine run of litigation, the evidentiary consideration counsels narrower delineation of the dimensions of a claim. Key issues to be litigated in a latent disease case are the existence of the disease, its proximate cause, and the resultant damage. Evidence relating to these issues tends to develop, rather than disappear, as time passes." (*Id.* at p. 119.)

The court further observed that the system of adjudication for personal injuries seeks to provide "relief that will sufficiently, but not excessively, compensate persons for injuries occasioned by the tortious acts of others. In latent disease cases, this community interest would be significantly under-mined by a judge-made rule that upon manifestation of any harm, the injured party must then, if ever, sue for all harms the same exposure may (or may not) occasion some time in the future." (*Wilson, supra*, 684 F.2d at p. 119.) That is because recovery of damages for speculative future consequences are not permitted, and, in latent disease cases, most plaintiffs will be unable to prove that the likelihood of the future illness is "reasonably certain," i.e., greater than 50 percent, as courts generally require. (*Ibid.* [citing cases].)

The *Wilson* court explained that concern for judicial economy also influenced its decision: "Upon diagnosis of an initial illness, such as asbestosis,

the injured party may not need or desire judicial relief. Other sources, such as workers' compensation or private insurance, may provide adequate recompense for the initial ailment. If no further disease ensues, the injured party would have no cause to litigate. However, if such a person is told that another, more serious disease may manifest itself later on, and that a remedy in court will be barred unless an anticipatory action is filed currently, there will be a powerful incentive to go to court, for the consequence of a wait-and-see approach to the commencement of litigation may be too severe to risk. Moreover, a plaintiff's representative in such a case may be motivated to protract and delay once in court so that the full story of his client's condition will be known before the case is set for trial." (*Wilson, supra,* 684 F.2d at p. 120.)[6]

We agree with the *Wilson* court that "a model or rule acceptable for more common personal injury actions may not be appropriate in latent disease cases" such as the present one. (See *Wilson, supra,* 684 F.2d at p. 120.) Many other jurisdictions have adopted this approach, finding that each disease resulting from asbestos exposure triggers anew the running of the statute of limitations. (See, e.g., *Jackson v. Johns-Manville Sales Corp.* (5th Cir. 1984) 727 F.2d 506, 516-522 [holding, under Mississippi law, that plaintiff could maintain current asbestosis claim and could also sue later should he contract asbestos-related cancer]; *Sheppard v. A.C. & S. Co.* (Del.Super. Ct. 1985) 498 A.2d 1126, 1134, affd. *sub nom. Keene Corp. v. Sheppard* (Del. 1986) 503 A.2d 192 [plaintiff could pursue asbestosis action even though that disease was diagnosed outside of statute of limitations for earlier diagnosed pleural thickening]; *Pierce v. Johns-Manville Sales Corp.* (1983) 296 Md. 656 [464 A.2d 1020, 1027] [allowing claim for lung cancer where no action was ever brought for earlier manifesting asbestosis]; *Marinari v. Asbestos Corp., Ltd.* (1992) 417 Pa.Super. 440 [612 A.2d 1021, 1023] [following "majority of jurisdictions which have confronted the special problems created by asbestos litigation" in adopting "separate disease" rule in asbestos exposure cases].)[7]

As the court explained in *Sheppard v. A.C. & S. Co., supra,* 498 A.2d at page 1134, a case in which a plaintiff did not sue when he was diagnosed

---

[6]In holding that diagnosis of a separate asbestos-related disease will trigger a new statute of limitations, the *Wilson* court specifically declined to decide whether a prior judgment on a claim for asbestosis would have precluded a subsequent claim based on the mesothelioma diagnosis, since that issue was not properly before it. (*Wilson, supra,* 684 F.2d at p. 117.)

[7]Some of the relevant cases, including *Hagerty v. L & L Marine Services, Inc., supra,* 788 F.2d 315, address the question in terms of the permissibility of splitting causes of action for malignant versus nonmalignant asbestos-related diseases, undoubtedly because the context in which such cases arise often involves a plaintiff with a nonmalignant disease trying to recover for increased risk of cancer. A similar analysis is, however, also generally applicable to the present case, where we are asked to find that the statute of limitations for asbestosis does not begin to run upon the diagnosis of an earlier, less serious disease (pleural disease).

with pleural thickening caused by prior asbestos exposure, but waited until he suffered from asbestosis: "[L]atent disease cases justify a change in our perception and application of the statute of limitations to the end that a plaintiff with the misfortune of contracting more than one asbestos-related ailment over a long period of time not be without a remedy for the later and generally more serious and inherently unknowable claims."[8]

In the present case, we adopt the approach to this difficult issue followed in *Wilson* and numerous other cases and find that appellant has stated a timely claim for his asbestosis, which, according to the complaint, was diagnosed in 1998 and is a separate disease from his previously diagnosed pleural disease. (See *Marshall v. Gibson, Dunn & Crutcher, supra,* 37 Cal.App.4th at p. 1403.) To hold otherwise would leave plaintiffs in Jones Act cases, such as appellant, with the untenable choice of either suing and attempting to prove damages for mild, asymptomatic asbestos-related diseases or being forever barred from obtaining any relief for the often devastating effects of prolonged asbestos exposure.[9] Accordingly, we conclude that the trial court erred in sustaining respondents' demurrer without leave to amend.

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court for further proceedings. Costs on appeal to appellant.

Haerle, J., and Ruvolo, J., concurred.

A petition for a rehearing was denied October 27, 2000, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied January 10, 2001. Brown, J., was of the opinion that the petition should be granted.

---

[8]We agree with respondents that two cases cited by appellant in support of his position, *Aparicio v. Norfolk & Western Ry. Co.* (6th Cir. 1996) 84 F.3d 803, abrogated on other grounds in *Reeves v. Sanderson Plumbing Products, Inc.* (2000) 530 U.S. 133 [120 S.Ct. 2097, 147 L.Ed.2d 105], and *Monaghan v. Union Pacific R. Co.* (1993) 242 Neb. 720 [496 N.W.2d 895], are not particularly relevant to this case. Although there are some similarities between those cases and the present one, there are also differences that render *Aparicio* and *Monaghan* less useful than the cases previously discussed.

[9]We have no reason to decide in this case whether a prior action on a claim for pleural disease would have precluded a later claim based on the asbestosis diagnosis, since that issue is not before us. (See *Wilson, supra,* 684 F.2d at p. 117.)