Raymond HICKS, Plaintiff-Appellant,

v.

HINES INC., et al.,
Defendants-Appellees.

No. 86–5359.

United States Court of Appeals,
Sixth Circuit.

Argued March 17, 1987.

Decided Sept. 2, 1987.

John E. Wise, Louisville, Ky., Judith B. Hoge, Co-Counsel (argued), Anchorage, Ky., for plaintiff-appellant.

Daryl F. Sohn, Jill Rubin Hummel, Jeanne Knowles Townsend, Goldstein and Price, St. Louis, Mo., Charles G. Middleton, III (Union Carbide), Louisville, Ky., Robert M. Cantois, Jr. (argued), New Orleans, La., William R. Ellis (argued), William B. O'Neal, Michael Eagen, Cincinnati, Ohio, for defendants-appellees.

Before KRUPANSKY and BOGGS, Circuit Judges, and TAYLOR, District Judge.[*]

BOGGS, Circuit Judge.

Plaintiff-appellant Raymond Hicks appeals the district court's grant of summary judgment against his Jones Act suit for exposure to chemicals and alleged subsequent bladder cancer. We agree that

[*] The Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, sitting by designation.

Hicks reasonably could have known that he had been harmed prior to the running of the statute of limitations, and therefore affirm the district court's grant of summary judgment.

## I

Plaintiff-appellant Raymond Hicks worked for various barge companies from 1954 to 1967. He alleges that in the course of this work, he was exposed to chemicals such as chlorine, caustic soda and benzene, and due to his posture as a party opposing a motion for summary judgment we assume his allegations to be true. Hicks has been totally blind in one eye since age 14. When he developed eye trouble in 1973, the treating eye doctor asked if he worked in a chemical plant, mentioned that Hicks had "chemical spots" in his eye, and stated that he could expect degeneration in it, according to Hicks. In 1976, Hicks passed some blood in his urine for four or five days, which he attributed to the physical strain of farm work. In 1979, he went completely blind, but partially recovered his vision following eye surgery. In 1983, bladder cancer was diagnosed and surgically removed. Hicks filed suit in 1984 under the Jones Act, 46 U.S.C. § 688 (1982), against various barge companies and a chemical manufacturer, alleging that exposure to the chemicals caused his bladder cancer.

The district court dismissed the case as filed beyond the three years allowed by the statute of limitations of the Jones Act and of the Federal Employers' Liability Act, 45 U.S.C. § 56 (1982). The court reasoned that Hicks knew the cause of his eye condition in 1973, as admitted in a pre-trial deposition, and this knowledge demonstrated that he had an obvious injury and knew its cause. The district court held that a suit based on the bladder cancer was barred because it was the result of the same alleged tortious exposure to harmful chemicals.

## II

The case presents a single question: should Hicks reasonably have known of his injury and its alleged cause, so as to commence the running of the statute of limitations, at any time more than three years prior to 1984, when he filed suit?

### A

The general rule is that a tort cause of action accrues when there has been a violation of legally protected interests. *See* Restatement (Second) of Torts § 899, comments c and e (1977). This violation usually occurs when the tortious event is committed. *See Echols v. Chrysler Corp.*, 633 F.2d 722 (6th Cir.1980).

If greater than *de minimis* harm is discernable at the time of the tortious event, then the "time of the event" rule applies, plaintiff's cause of action accrues, and the statute of limitations begins to run. Even if "the plaintiff later discovers that his injuries are more serious than he originally thought, his cause of action nevertheless accrues on the earlier date, the date he realized that he had sustained harm from the tortious act." *Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 229 (5th Cir.1984).

However, if the injured person sustains an injury which cannot itself reasonably be discovered, or the cause of which cannot reasonably be discovered, until some time following the tortious event and the running of the statute of limitations, courts often apply the "discovery" rule, tolling the running of the statute of limitations to the date by which the plaintiff reasonably should have discovered both cause and injury. *United States v. Kubrick*, 444 U.S. 111, 122, 100 S.Ct. 352, 359, 62 L.Ed.2d 259 (1979). *See also Urie v. Thompson*, 337 U.S. 163, 170, 69 S.Ct. 1018, 1025, 93 L.Ed. 1282 (1949) (claim does not accrue until the injury manifests itself).

The time of event rule and the discovery rule give rise to two types of cases. These are, respectively, the case in which a clearly damaging event is followed by a latent manifestation and the latent injury case. The traumatic event/latent manifestation case occurs when a noticeable, traumatic occurrence causes both obvious and latent injuries. Although the ultimate gravity of

the harm may not be manifest, the plaintiff recognizes both the injury and its cause. In contrast, the latent injury case occurs when the plaintiff is either unaware of the injury or unaware of its cause until a significant period of time has elapsed following the tortious act.

The discovery rule was first defined in an occupational disease case, and is frequently applied in that setting. In *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, a railroad worker was exposed for thirty years to air containing silica dust, culminating in silicosis which developed following his retirement. His employer pled the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 52–60 (1982), statute of limitations. The Supreme Court rejected that defense as requiring an innocent plaintiff to know facts which were "unknown and inherently unknowable." *Urie*, 337 U.S. at 169, 69 S.Ct. at 1024.

The function of the time of event rule is to implement the purpose of statutes of limitations, which is to provide fairness to a defendant, while preserving a reasonable period of time within which a plaintiff can present his claim. *Burnett v. New York Central R.R.*, 380 U.S. 424, 428, 85 S.Ct. 1050, 1054–55, 13 L.Ed.2d 941 (1965); *United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259. Prompt vindication of known rights ensures that lost evidence, fading memories, and unavailable witnesses do not prejudice the defendant. *Burnett*, 380 U.S. at 428, 85 S.Ct. at 1054.

Application of the time of event rule, rather than the discovery rule, reflects the collective legislative and judicial judgment that a plaintiff possessing knowledge of the critical facts of his injury and its cause has the duty to comply with the applicable statute of limitations and make the defendant aware that he will pursue a claim against it. A plaintiff armed with these facts cannot argue persuasively that the time of event rule offends notions of fair play and substantial justice, even though he is unaware of all of the facts related to his injury or its cause. Indeed, in *Urie*, the Supreme Court implied that plaintiff possessing "notice of the invasion of [his] legal rights" could not avail himself of the discovery rule, since the time of event rule adequately protected the plaintiff's legal interest and rights. 337 U.S. at 170, 69 S.Ct. at 1025.

*Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 232 (5th Cir.1984).

We recognize the difficulty which arises when a plaintiff who has suffered a legally cognizable but relatively small injury is required to sue for both existing and potential damages. This difficulty may be particularly formidable when there is only a possibility of any particular future illness, as can often occur when the potential illness is cancer. *See Jackson v. Johns Manville Sales Corp.*, 727 F.2d 506 (5th Cir. 1984), *reh'g en banc*, 750 F.2d 1314, *certified to state court*, 757 F.2d 614, *certification declined*, 469 So. 99 (1985), *reh'g en banc*, 781 F.2d 394 (1986). A plaintiff's interest in filing his suit within the relevant statute of limitations conflicts with his inability to display symptoms of a particular future illness. The defendant's interest in repose also conflicts with his exposure to claims for potential damages which may never come to pass.

Different courts have reached different conclusions about appropriate mechanisms for dealing with this dilemma. The Fifth Circuit has stated that

> [a]t least in the toxic chemical or asbestos cases, the disease of cancer should be treated as a separate cause of action for all purposes. There should be no cause of action or beginning of the running of limitations until the diagnosis of the disease.

*Hagerty v. L & L Marine Services, Inc.*, 788 F.2d 315 (5th Cir.1986). On the other hand, there are other means of addressing this issue which seem at least as efficacious, while still preserving the policy of repose advanced by the statute of limitations. One possibility would be to award an insurance policy covering the risk of developing cancer as part or all of the compensation for unmanifested injuries stemming from an exposure to carcinogen-

ic materials. The risk prediction and distribution involved in such an award is a function for which insurance companies and policies are exactly fitted.

**B**

Hicks argues that his is a latent injury case, that the fact that the 1973 discovery of chemical spots did not causally accompany any diagnosis of injury means that there was no discovery of harm at that time, and thus distinguishes this case from those in which the time of event rule applies.

The district court characterized this as a traumatic event/latent injury case, and therefore analogized it to *Albertson v. T.J. Stevenson & Co., Inc.,* 749 F.2d 223 (5th Cir.1984), the leading case on the choice between the time of exposure rule and the discovery rule in applying the Jones Act's three-year statute of limitations. Albertson was exposed to trichloroethylene (TCE), which caused him to lose consciousness and experience severe headaches on five or six occasions during a voyage in 1968–69. After his last blackout, he informed his superiors that he would not apply the TCE again. Upon his return home, Albertson was hospitalized, and continued to experience headaches. His disability was such that his seaman's certification was removed. He later experienced blackouts, nausea, and hallucinations, leading to a suicide attempt. In 1980, a doctor informed him that his exposure to TCE was probably causally connected to his psychological problems. In 1981, he filed suit, which was dismissed as untimely.

The appellate panel held that the latent nature of Albertson's physical and mental problems which developed later did not toll the statute of limitations, because Albertson knew he had suffered serious damage and noteworthy injury, and knew the injury was significant at the time he was last exposed to TCE. His headaches, nausea, blackouts and poor medical condition, which required the decertification of his fitness for sea duty status, provided him with a reasonable opportunity to discover the critical facts of his injury and its cause at the time of his last exposure and injury.

In the present case, the district court reached its conclusion based on Hicks's deposed statements that during treatment for glaucoma in 1973 he was asked whether he worked in a chemical company, was told that he had chemical spots in his eyeballs, and that he would have problems with his eyes in ten to twelve years. Our examination of the record confirms the district court's finding of fact that Hicks was aware that he had been exposed to chemicals as early as 1973. However, it is not clear to us either that the eye doctor was stating that the exposure to the chemicals was the cause of the problem for which he was treating Hicks, or that Hicks's awareness of his injury provided notice that would trigger the running of the statute of limitations. Hicks stated in his deposition that he ignored the doctor's statement, that he had thought that the cause of his eye problem was his headaches. This suggests that he

> regarded his problem as one of those passing aches and pains which laboring people expect and endure.... It would be a different matter if [the plaintiff] had suffered some significant disability....

*Marathon Oil Co. v. Lunsford,* 733 F.2d 1139, 1141–42 (5th Cir.1984) (citations omitted) (neck sprain did not put plaintiff on notice of herniated disk). In comparison with Albertson, for instance, we note that the severity of Hicks's pre-blindness reaction to the chemicals, momentary headaches and eye problems, was much less.

 Thus, we are unable to draw the legal conclusion that a single statement in the context of a treatment for a possibly irrelevant medical condition, at a time when Hicks was not necessarily suffering from any illness causally related to his exposure to chemicals, was sufficient to put Hicks on notice that he had to sue for all existing and future manifestations of illness due to his exposure to chemicals. However, Hicks's eye problems led to his total blindness in 1979. Even if his eye doctor's statements in 1973 did not make Hicks aware of the fact of his injury, it is inconceivable that he would have been unaware of the gravity of an injury of such dev-

astating magnitude. The combination of his knowledge of the eye doctor's statements and Hicks's later blindness should reasonably have put him on notice by 1979, more than three years prior to the time at which he filed suit, that he had been exposed to injurious chemicals and suffered damage therefrom. This was sufficient to begin the running of the three-year statute of limitations. We therefore AFFIRM the district court's grant of summary judgment.