IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 20, 2011 Session

## WILLIAM MAY
v.
## ILLINOIS CENTRAL RAILROAD COMPANY

**Appeal from the Circuit Court of Shelby County**
**No. CT-002228-05     Donna M. Fields, Judge**

_____

**No. W2010-01272-COA-R9-CV - Filed June 9, 2011**

_____

This appeal involves a claim under the Federal Employers' Liability Act.  The plaintiff
employee filed this lawsuit against the defendant railroad alleging injuries caused by his
employment.  The railroad company filed a motion for summary judgment, asserting that the
employee's claims are time-barred.  The railroad argued that, under the discovery rule, the
facts showed that the employee knew or should have known that his injuries were work-
related more than three years before the lawsuit was filed.  The trial court denied the motion
for summary judgment.  The railroad was granted permission for this interlocutory appeal.
We affirm.

**Tenn. R. App. P. 9 Interlocutory Appeal by Permission; Judgment of the Circuit**
**Court Affirmed.**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and
J. STEVEN STAFFORD, J., joined.

Stephen R. Leffler, Law Office of Stephen R. Leffler, Memphis, Tennessee and H. Chris
Christy, Law Office of H. Chris Christy, Little Rock, Arkansas, for Plaintiff/Appellee,
William May.

S. Camille Reifers and Brooks E. Kostakis, Boyle Brasher LLC, Memphis, Tennessee, for
Defendant/Appellant, Illinois Central Railroad Company.

# OPINION

## FACTS AND PROCEEDINGS BELOW

Plaintiff/Appellee William May ("May") was born in 1954 and completed high school. In 1972 May began his employment with Defendant/Appellant Illinois Central Railroad Company ("ICRR)."

May's work for ICRR was always physically demanding, using a variety of tools that evolved over the course of his employment. Initially, he worked as a laborer on railroad cross ties, rails, joints and bolts, using hand tools such as wrenches, claw bars, iron jacks, shovels and picks, as well as power tools that were powered by vibrating generators. Subsequently, he worked as a welder helper assisting welders, and also as a grinder operator. In these positions, he used tools such as sledge hammers and hot cuts, which he used to cut solidified metal and wheel attachments.

In 1975, May became qualified as a welder. He remained in this position for ICRR until 2003, using an electric welder.[1] Over the course of his tenure as a welder, hand air tampers replaced generators, and hand air tampers were subsequently replaced by hydraulics. Later, hydraulic cutters replaced hot cuts; these minimized the use of a sledgehammer. May used a rail puller machine to pull the railroad rails together. Subsequently, some tools were replaced by hydraulic spike drivers and hydraulic grinders.

In May 2001, May visited John McFadden, M.D. for a diagnosis regarding pain in his hands and elbows. May was experiencing a throbbing elbow, tingling hands, and some numbness. These symptoms arose between two or three times per day, sometimes while he was at work. Following up on information provided to him by his union, May asked Dr. McFadden whether he had carpal tunnel syndrome. Dr. McFadden told May that he was suffering from tendinitis and/or a deranged elbow and gave him a prescription for Vioxx.

May's symptoms did not resolve. In June 2002, May visited another physician, Joseph Hanaway, M.D. ("Dr. Hanaway"), who conducted tests on May's hands and elbows and diagnosed him with carpal tunnel syndrome and cubital tunnel syndrome. Dr. Hanaway opined that May's problems were related to his work at the railroad. He referred May to a surgeon, David Haueisen, M.D. ("Dr. Haueisen"), who concurred in Dr. Hanaway's diagnosis and recommended surgery.

---

[1] Over the course of his employment with ICRR, May also worked as a machine operator and a foreman. As a machine operator, he operated tampers, regulators and brush cutters.

Pursuant to Dr. Haueisen's recommendation, in the fall of 2004, May underwent surgery on both hands and one elbow. The surgery alleviated some of his symptoms, but he was still left unable to grip and lift some tools. May left his employment with ICRR in October 2004 and began drawing disability benefits.

On April 22, 2005, May filed the instant lawsuit against ICRR asserting a claim under the Federal Employers' Liability Act ("FELA"). May's complaint alleged that during his employment, ICRR negligently required him to operate various tools and equipment for unreasonably extended periods of time without appropriate protection. May also asserted failure to warn. May claimed that he was permanently disabled from various conditions, including carpal tunnel syndrome, and sought compensatory damages.

ICRR filed its answer on July 1, 2005, denying liability, asserting negligence by May, and asserting that May's claims were barred by the applicable statute of limitation. Discovery ensued.

In May's deposition, he testified about the numbness and tingling in his hands, the throbbing in his elbows, and the pain in his shoulders, back and neck. Questioned as to what tasks at work caused him to experience these symptoms May responded:

> Most of the time running one of these tools, you know either the vibrating one or sometime- one time I let a sledgehammer go, you know, and almost hit a guy. You know, I lost my grip on it, but most of the time when I'd feel the tingling it would be after- after quitting running one of those [vibrating or impact] tools.

May testified that when he visited the first physician, Dr. McFadden, he was unsure as to whether his symptoms were related to his employment with ICRR.[2]

May testified that, in June 2002, when he visited the second physician, Dr. Hanaway, his problem was diagnosed as carpal tunnel syndrome.[3] After that, May became certain that his work was the cause of his carpal tunnel syndrome and the ensuing disability.

---

[2]When May gave his deposition testimony, he could not remember the name of the first physician, nor could he remember exactly when he visited the first physician. Through discovery, it was later determined that the first physician was Dr. McFadden, and that May visited him in May 2001.

[3]Similarly, when May gave his deposition testimony, he was unsure of the name of the second physician he visited, later determined through discovery to be Dr. Hanaway.

In June 2009, ICRR filed a motion for summary judgment asserting that May's action was time-barred under the three-year statute of limitations applicable to FELA claims. ICRR argued that, under the discovery rule,[4] May knew or should have known that his condition was work-related in May 2001 when he visited Dr. McFadden. In support, ICRR attached the medical records from May's visit to Dr. McFadden, noting that, at that time, May was experiencing the symptoms of pain, tingling and numbness in his hands and elbow and visited Dr. McFadden because he believed that he may have been suffering from carpal tunnel syndrome.

In response to ICRR's motion for summary judgment, May argued that there was a genuine issue of material fact as to the timeliness of his claim. May contended that the May 2001 medical records show only that he suspected that there was a problem with his hands and elbow that might be carpal tunnel syndrome, because the symptoms at that time were intermittent. May asserted that, in 2002, his symptoms worsened and became less intermittent. May claimed that he did not relate his condition to his employment until June 2002, when he visited Dr. Hanaway, who diagnosed carpal tunnel syndrome and indicated that it was work-related. May attached the medical records of Dr. Hanaway and his surgeon, Dr. Haueisen, to his response.

The trial court held a hearing on ICRR's summary judgment motion on October 9, 2009. The trial court noted that, at the time of May's 2001 visit to Dr. McFadden, May recognized that he experienced pain following the use of vibrating tools. However, the trial court also observed that May was not diagnosed with carpal tunnel at his 2001 doctor visit, but was instead diagnosed with derangement of the left elbow.

On February 18, 2010, the trial court entered a written order denying ICRR's motion for summary judgment, finding that there was a material issue of fact with regard to the accrual date of May's FELA claim. During the hearing the trial court commented that May "is certainly not . . . one of the more sophisticated individuals, and I think he made a diligent effort to go find out what was wrong." Subsequently, ICRR obtained permission from the trial court and the appellate court for this interlocutory appeal of the denial of its summary

---

[4]Under the discovery rule, the statute of limitations begins to run when the injured party knows, or reasonably should know, the critical facts necessary to discover that he has a potential cause of action, *i.e.*, that he has been hurt and who inflicted the injury. ***See Hensley v. CSX Transp., Inc.***, 278 S.W.3d 282, 288 (Tenn. Ct. App. 2008).

judgment motion, on the issue of whether May's FELA claim was barred by the applicable three year statute of limitations.[5]  TENN. R. APP. P. 9.

**ISSUES ON APPEAL AND STANDARD OF REVIEW**

On appeal, ICRR argues that the trial court erred in denying its motion for summary judgment.  ICRR contends that the record demonstrates that May knew, or should have known, both of his injury and its cause no later than May 2001, when he visited Dr. McFadden.  In response,  May maintains that the record shows that a genuine issue of material fact remains as to whether May knew of his injury and its cause more than three years prior to the filing of his complaint.

"Our review of a trial court's award of summary judgment is *de novo* with no presumption of correctness, the trial court's decisions being purely a question of law."  ***Wylie Steel Fabricators, Inc. v. Johnson***, 179 S.W.3d 509, 514 (Tenn. Ct. App. 2005) (quoting ***BellSouth Adver. & Publ'g Co. v. Johnson,*** 100 S.W.3d 202, 205 (Tenn. 2003)).  Summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  TENN. R. CIV. P. 56.04; ***Estate of French v. Stratford House***, 333 S.W.3d 546, 553 (Tenn. 2011).  The party seeking summary judgment must show that there are no disputed material facts and he is entitled to judgment as a matter of law.  ***Id***.  At the summary judgment phase, neither the trial court nor the appellate court is to weigh the evidence or substitute its judgment for the trier of fact.  ***Id.***

**ANALYSIS**

On appeal, ICRR argues that the record shows that May knew or should have known of his injury and its cause by May 2001, and that his April 22, 2005 complaint is time-barred under the applicable three-year statute of limitations.

The Federal Employers' Liability Act , or FELA, is a broad remedial statute whose passage was prompted by the high rate of injury to workers in the railroad industry.  ***Jordan v. Burlington Northern Santa Fe R.R. Co.***, No. W2007-00436-COA-R3-CV, 2009 WL 112561, at \*5 (Tenn. Ct. App. Jan. 15, 2009), *perm. app. den.*, Aug. 31, 2009) (citations omitted); ***Blackburn v. CSX Transportation, Inc.***, No. M2006-01352-COA-R10-CV, 2008

---

[5]The denial of a summary judgment motion is not a final appealable order, so in order to appeal the trial court's order, ICRR had to obtain permission for an interlocutory appeal under Tenn. R. App. P. 9. ***See Christus Gardens, Inc. v. Baker, Donelson, Bearman, Caldwell & Berkowitz***, No. M2007-01104-COA-R3-CV, 2008 WL 3833613, at \*1 (Tenn. Ct. App. Aug. 15, 2008).

WL 2278497 at *8 (Tenn. Ct. App. May 30, 2008) (citing **Hardyman v. Norfolk & Western Ry. Co.**, 243 F.3d 255, 258 (6th Cir. 2001); **Levy v. Southern Pacific Transportation Co.**, 799 F.2d 1281, 1288 (9th Cir. 1986). For workers covered by FELA, the Act preempts state tort remedies and workers' compensation statutes. **Jordan**, 2009 WL 112561, at *5-6. FELA states in pertinent part:

> Every common carrier by railroad while engaging in commerce. . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce. . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats wharves or other equipment.

**Ward v. Illinois Central Railroad Co.**, No. W2010-00950-COA-R3-CV, 2011 WL 255156 at *3 (Tenn. Ct. App. Jan. 20, 2011) (quoting 45 U.S.C.A. § 51).

A cause of action brought pursuant to FELA must be filed "within three years from the day the cause of action accrued." **Ward**, 2011 WL 255156 at *4 (quoting 45 U.S.C.A. § 51.). The pivotal issue in this appeal is, of course, when May's FELA claim accrued. In **Ward v. Illinois Central Railroad Co.**, the standard for determining the date of accrual of a FELA claim such as May's was addressed at length:

> "Although 'accrual' of a cause of action, for the purposes of a statute of limitations, generally takes place 'when there has been a violation of legally protected interests,' or when the tortious event is committed,' some injuries and causes are so latent as to elude discovery at the time of the injury-causing event." **Fonseca v. Consol. Rail Corp.,** 246 F.3d 585, 588 (6th Cir. 2001) (quoting **Hicks v. Hines Inc.**, 826 F.2d 1543, 1544 (6th Cir. 1987)). In order to determine when a FELA cause of action accrues, "one of two rules applies: the time-of-event rule, or the discovery rule." **Id**. The time of event rule applies to situations in which a traumatic event occurs, resulting in a noticeable injury, even if the full manifestation of the harm remains latent." **Id**. The discovery rule applies "when no significant injury is discernable at the time of the tortious event, or if the cause of an injury is not apparent." **Id**. Under the discovery rule, the statute of limitations "begins to run as soon as the injured party is 'in possession of the critical facts' necessary to discover that a potential cause of action exists- namely, 'that he has been hurt and who has inflicted the injury.' " **Hensley v. CSX Transp.**, **Inc**, 278 S.W.3d 282, 288

(Tenn. Ct. App. 2008) (quoting ***U.S. v. Kubrick***, 444 U.S.111, 122 (1979).
"[A]n affirmative duty to investigate one's symptoms and their causes arises
when a claimant 'should have known' that such an investigation was needed;
in these cases, the statute of limitations will 'start. . . to run when a reasonable
person would know enough to prompt a deeper inquiry.' " ***Id***. (quoting
***Nemmers v. United States*** 795 F.2d 628, 631 (7th Cir. 1986)). In other words,
the cause of action is deemed to have accrued "when the plaintiff reasonably
should have discovered both cause and injury." ***Fonseca***, 246 F.3d at 588
(citing ***Hicks***, 826 F.2d at 1544).

***Id***. at *4. Thus, as noted by the parties and the trial court, the determinative issue is when
May knew or should have known that his injury resulted from his employment with ICRR.
***Id***. (citing ***Hensley,*** 278 S.W.3d at 288).

ICRR argues that the record shows that May knew of his injury when he visited Dr.
McFadden on May 25, 2001 due to the pain, tingling and numbness in his hands and wrists
that he was experiencing on a daily basis, and either knew or should have known at that time
that his injury was related to his railroad work. ICRR contends that May's concern was that
he was suffering from carpal tunnel syndrome, expressed to Dr. McFadden during the May
2001 visit, shows that he in fact had knowledge at that time that his condition was work-
related. ICRR maintains that whether May was specifically diagnosed with carpal tunnel
syndrome at that time was immaterial because May's "own admitted relation of the time
frame for the onset of symptoms more than one year earlier [than the June 2002 diagnosis by
Dr. Hanaway], their duration and frequency, and their effects on his work are identical to the
symptoms in [his] hands and elbows for which [he] sought treatment by Dr. McFadden in
May 2001." ICRR relies on May's deposition testimony that, by May 2001, May had noticed
that he experienced tingling and numbness in his hands and elbows when using vibrating
tools in his railroad work. By May 2001, May testified, he was experiencing pain in his
elbow, tingling in his hands and numbness, feeling these symptoms two to three times per
day. May acknowledged in his deposition that he recognized in May 2001 that he was
experiencing the symptoms while utilizing vibrating tools at work. Thus, by May 2001,
ICRR insists, even if May did not actually know that his condition was work-related, he
reasonably should have discovered that it was related to his ICRR employment.

ICRR asserts that, under Tennessee law, there is no requirement of a formal medical
diagnosis in order for a claim to accrue, citing ***Wansley v. Refined Metals Corp.***, 1996 WL
502497 at *4 (Tenn. Ct. App. Sept. 6, 1996). It also argues that May's injury need not reach
maximum severity in order for his claim to accrue, relying on ***King v. Nat'l R.R. Passenger
Corp.***, 2008 WL 4724381 at *4 (N.D. Ill. Oct. 24, 2008).

In response, May acknowledges that he visited Dr. McFadden in May 2001 to determine whether his symptoms were the result of carpal tunnel syndrome, and that he became aware of carpal tunnel syndrome through his union. However, Dr. McFadden neither stated that his condition was work-related nor diagnosed him with carpal tunnel syndrome; instead, Dr. McFadden diagnosed May as suffering from tendinitis and/or derangement of the left elbow.[6] May was not diagnosed with carpal tunnel syndrome until he visited Dr. Hanaway in June 2002, and was not told until then that his condition was work-related.

As noted by the trial court below, the record contains evidence indicating that, by May 2001, May had reason to know, or at least had inquiry notice, that his symptoms were related to his employment with ICRR. In his deposition, May testified that, by May 2001, he was experiencing symptoms daily, and experienced them at times while he was at work using vibrating tools or tools that required a firm grip, such as a sledgehammer. This led May to ask Dr. McFadden in May 2001 whether he had carpal tunnel syndrome. ICRR correctly points out that a formal diagnosis is not necessary to find that the claimant knew or should have known that his injury was work-related, and it is likewise not necessary that the symptoms reach maximum severity.

The record is not entirely clear whether May understood in May 2001, when he visited Dr. McFadden, that a diagnosis of carpal tunnel syndrome would be, in effect, a finding that his symptoms were related to his railroad work. However, under the facts in this case, it does not matter. For purposes of our analysis, we assume that, by May 2001, May was on inquiry notice that his symptoms may be work-related. His responsibility at that point was to exercise reasonable diligence to determine whether his condition was related to his employment; "the plaintiff must go after the facts; [he] cannot wait for the facts to find [him]." *Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 731 (Tenn. Ct. App. 2008), *perm. app. den.* (quoting *Jolly v. Eli Lilly & Co.*,. 751 P.2d 923 (Cal. 1988)). Here, the evidence in the record indicates that May did just that; he visited Dr. McFadden in May 2001 for a diagnosis and also to ascertain whether he had carpal tunnel syndrome. As we "follow the thread"[7] of a reasonable inquiry at a point, in response to his inquiry, the diagnosis May received was not that he had carpal tunnel syndrome or that his condition was work-related. Instead, Dr. McFadden told May only that he had tendinitis and/or an unspecified derangement of his elbow. Neither Dr. McFadden's medical records nor May's

---

[6]May stated in his deposition that Dr. McFadden diagnosed him in 2001 with tendinitis. Dr. McFadden's medical records state that the diagnosis was derangement of the left elbow. Regardless, Dr. McFadden's diagnosis of May was not carpal tunnel syndrome.

[7]*Doe*, 306 S.W.3d at 728.

deposition testimony contain any evidence that the response to May's inquiry communicated to May that his condition was related to his railroad work.

Considering the record as a whole, we must agree with the trial court[8] that a genuine issue of fact remains as to whether May knew or should have known prior to Dr. Hanaway's June 2002 diagnosis that his condition was work-related.[9] Accordingly, we affirm the trial court's denial of ICRR's motion for summary judgment.

CONCLUSION

The decision of the trial court is affirmed. Costs on appeal shall be taxed to Illinois Central Railroad Company and its surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE

---

[8]ICRR asserts on appeal that the trial court erred by considering whether May was a "sophisticated individual[]" in considering its ruling on the summary judgment motion. We do not reach this issue, as we find that a genuine issue of material fact remains regardless of whether May's level of "sophistication" is taken into account.

[9]Ordinarily, when a FELA claim is brought in a state court, federal law is applied to the substantive matters and state law is applied to questions of procedure. *Blackburn*, 2008 WL 2278497 at *7 (citing 32B American Jurisprudence, FEDERAL EMPLOYERS' LIABILITY AND COMPENSATION ACT, § 54). However, when a procedural rule determines the outcome of a FELA claim, "the federal standard should be applied if it is materially different from the state standard." *Hensley*, 310 S.W.3d at 830 (citations omitted). In this case, at the time the trial court below ruled on ICRR's summary judgment motion, Tennessee's standard for summary judgment under *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1 (Tenn. 2008), differed materially from the federal summary judgment standard. *See In Re Estate of Eloise J. Storey*, No. W2010-00819-COA-R3-CV, 2011 WL 2174901 (Tenn. Ct. App. May 31, 2011). However, we need not address which summary judgment standard would apply because, under the record in this case, we would reach the same result with either summary judgment standard.